[THE STATE, EX REL.] NORTHERN OHIO PATROLMEN'S BENEVOLENT ASSOCIATION ET AL., *v.* WAYNE COUNTY SHERIFF'S DEPARTMENT ET AL.

(No. 2114 — Decided April 9, 1986.)

*Paul S. Lefkowitz,* for relators.
*John S. Jones,* for respondents.

MAHONEY, P.J. Relators, Northern Ohio Patrolmen's Benevolent Association ("NOPBA") and Wayne County Deputy Sheriff Charles Hardman, seek a writ of mandamus ordering respondents, Wayne County Sheriff's Department and Sheriff Loran Alexander, to comply with the April 16, 1985 order of the State Personnel Board of Review disaffirming Hardman's ten-day suspension without pay from the sheriff's department. We deny the writ.

Charles Hardman, in addition to working as a deputy sheriff in the Wayne County Sheriff's Department, serves as a director of the NOPBA. On October 16, 1984, the NOPBA sponsored a "Meet the Candidates Night" for its members. Local candidates, whose party affiliations had been identified in notices of the meeting, addressed the membership. Following the candidates' presentations, the membership voted to endorse one candidate for each office. Specifically, the NOPBA voted unanimously to endorse incumbent Sheriff Alexander's challenger. The NOPBA then issued a press release announcing the endorsements. Hardman signed the release in his capacity as director of the NOPBA. The Akron Beacon Journal published the endorsement on October 26, 1984.

On December 31, 1984, Sheriff Alexander suspended Hardman for ten days without pay for engaging in political activity proscribed by R.C. 124.57, Ohio Adm. Code 123:1-46-02 and Section 7.12 of the Wayne County Personnel Policy Manual.

Hardman appealed his suspension to the board of review. Following a hearing, an administrative law judge, on March 27, 1985, recommended that Hardman's suspension be affirmed. She concluded that Hardman's affixing his name to an endorsement of candidates for partisan political office was tantamount to the proscribed political activity of campaigning.

Upon review, the board of review rejected the administrative law judge's recommendation. It its opinion, dated April 16, 1985, the board reasoned that "[a]ppellant should not be punished for doing his job as director of the NOPBA [and that] [h]e did not do what was done as an individual." Accordingly, the board disaffirmed Hardman's suspension.

Hardman demanded that respondents comply with the order of the board. They refused, and relators commenced this action. The relators seek an order requiring respondents to comply with the board's order and to compensate Hardman for his lost wages.

Relators, in support of the request that a writ of mandamus be allowed, contend that the respondents have a clear legal duty to comply with the board's order to disaffirm Hardman's suspension and that the relators have no plain and adequate remedy in the ordinary course of the law.

The Ohio Supreme Court has held that a classified employee whose suspension has been disaffirmed by the board of review may unquestionably maintain an action in mandamus to recover compensation due him for the period during

which he was wrongfully excluded from his employment. *State, ex rel. Hamlin,* v. *Collins* (1981), 65 Ohio St. 2d 63 [19 O.O. 3d 259], modified on other grounds (1984), 9 Ohio St. 3d 117. The employer, in response to the complaint for a writ of mandamus, may raise the affirmative defense that the board of review abused its discretion in disaffirming the suspension. *State, ex rel. Ogan,* v. *Teater* (1978), 54 Ohio St. 2d 235 [8 O.O. 3d 217], paragraph three of the syllabus. Thus, a court will decline to issue a writ where it finds that the employer has no clear legal duty to comply with a board of review order, either because the board's decision is contrary to law or because there is no evidence in the record to support the board's decision. *State, ex rel. Potten,* v. *Kuth* (1980), 61 Ohio St. 2d 321 [15 O.O. 3d 391], paragraph one of the syllabus.

For the reasons hereinafter set forth, this court finds that relators are not entitled to a writ of mandamus. R.C. 124.57 provides that "[n]o officer or employee in the classified service of the state * * * shall directly or indirectly * * * be an officer in any political organization or take part in politics other than to vote as he pleases and to express freely his political opinion." Ohio Adm. Code 123:1-46-02(C)(7) provides examples of the political activity proscribed by R.C. 124.57: "Campaigning by writing for publications, by distributing political material * * * on behalf of a candidate for partisan elective office, when such activities are directed toward party success."

The Ohio Supreme Court has interpreted a predecessor to R.C. 124.57, and specifically the expression "take part in politics," as referring only to partisan political activities. *Heidtman* v. *Shaker Heights* (1955), 163 Ohio St. 109, 119-120 [56 O.O. 171]. In upholding the constitutionality of a predecessor to R.C. 124.57, the court in *Gray* v. *Toledo* (N.D. Ohio 1971), 323 F. Supp. 1281

reasoned that " * * * the protection of the efficiency and integrity in the public service constitutes a sufficient governmental interest to permit an encroachment upon the first amendment rights of the employees. * * *" *Id.* at 1285.

We have no doubt that relators' conduct of endorsing one candidate over another falls clearly within the ambit of partisan political activity proscribed by R.C. 124.57. We believe, as stated by the Administrative Law Judge, that: "Endorsement is not so much an expression of opinion as an attempt to influence other persons to vote for the candidate one has selected. * * * The only possible intent of publishing [the endorsement] would be to influence others to vote for these candidates, *i.e.,* campaigning." Indeed, the board of review disaffirmed Hardman's suspension on the ground that he signed the endorsement as director of the NOPBA and not because the endorsement constituted non-partisan political activity. Signing an endorsement as director of the NOPBA, however, cannot make the conduct any less partisan and, therefore, prohibited. If such were the case, a classified employee could participate in partisan political activities in some capacity other than as an individual and circumvent the statute's purpose of freeing state employees from political control or from having the power to ingratiate themselves with political parties or elected officials through political activities. See *Heidtman, supra,* at 119.

The board of review was obligated to carry out the statutory provisions prohibiting classified employees from engaging in political activity. See *Jackson* v. *Coffey* (1977), 52 Ohio St. 2d 43 [6 O.O. 3d 156]. The board clearly failed to satisfy this obligation when it disaffirmed Hardman's suspension despite his obvious participation in partisan political activities. As the board's order was contrary to law, the respondents had no clear legal duty to comply

with the order. Relators, therefore, are not entitled to a writ of mandamus.

For the reasons set forth in this opinion, we find that relators are not entitled to a writ of mandamus. Respondents had no clear legal duty to comply with the April 16, 1985 order of the board of review.

*Writ denied.*

QUILLIN and LYNCH, JJ., concur.

LYNCH, J., retired, of the Seventh Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.